United States District Court
Southern District of Texas
**ENTERED**
October 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00162 |
| | § | |
| LANETTE LINTHICUM, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO RETAIN CASE AND DISMISS CERTAIN CLAIMS

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts claims against Defendants under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

Plaintiff has stated for purposes of screening: (1) Eighth Amendment deliberate indifference claims against **Dr. Lanette Linthicum, Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin** in their individual and official capacities; and (2) ADA/RA claims against **Dr. Lanette Linthicum, Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin** in their official capacities. Accordingly, it is respectfully recommended that these claims be **RETAINED**. The undersigned will order service on Defendants.

1 / 20

For the reasons set forth below, the undersigned recommends further that: (1) Plaintiff's § 1983 claims for money damages against **Dr. Lanette Linthicum, Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; (2) Plaintiff's ADA/RA claims against **Dr. Lanette Linthicum, Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin** in their individual capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

## I.   JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.   PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: (1) Dr. Lanette Linthicum (Dr. Linthicum); (2) Dr. Isaac Kwarteng (Dr. Kwarteng); (3) McConnell Unit Warden Jerry Sanchez (Sanchez) ; and (4) TDCJ Director Bobby Lumpkin (Lumpkin). Plaintiff generally claims that Defendants violated his Eighth Amendment and ADA/RA rights in

connection with his lack of access to certain treatment for his Type 2 diabetes. In his Original Complaint, Plaintiff seeks monetary relief. (D.E. 1, p. 17).

On August 30, 2022, the undersigned conducted a *Spears*[1] hearing where Plaintiff was given an opportunity to explain his claims. The following representations were made either in Plaintiff's Original Complaint (D.E. 1) or at the *Spears* hearing. At the time of the *Spears* hearing, Plaintiff was 50 years old. He is 6'0" tall and weighs 213 pounds. (D.E. 9, p. 3). Plaintiff arrived at the McConnell Unit on October 1, 2021. (*Id.*).

Plaintiff was diagnosed with Type 2 diabetes in 2015. (*Id.* at 18). While confined at the McConnell Unit, medical providers Goyel and Eric Echavarry prescribed Plaintiff with the following medications to treat his diabetes: (1) 2000 milligrams per day of Metformin; (2) 20 milligrams of Glipizide; and (3) five milligrams of insulin on a sliding scale taken twice per day. (*Id.* at 18-20). Plaintiff explained to the Court that insulin helps to control his high blood sugar. (*Id.* at 20). When his blood sugar levels are not controlled, Plaintiff urinates frequently, has frequent thirst, and suffers from swelling in the lower extremities and blurred vision. (*Id.* at 20-21).

Plaintiff does not complain about his diabetes treatment plan but instead alleges that he is not getting proper access to his daily insulin. (*Id.* at 20). At all relevant times, Plaintiff was confined in closed custody which required him to have a prison official escort him to the medical department. (*Id.* at 21). On multiple occasions, he was not able to get his

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

insulin treatment as escorts were not available to take him to the diabetic clinic.  (*Id.* at 21-
22).

Plaintiff states that medical officials have a policy or practice where, if the inmate
misses his insulin dosage, staff does not follow up with the inmate and bring the insulin to
the inmate.  (*Id.* at 22-24).  According to Plaintiff, his physical disabilities prevent him
from being able to access the medical department to get his insulin.  (*Id.* at 24).  Plaintiff
states that he has a lateral pelvic tilt arising after he suffered a left tibia fracture in a 1996
automobile accident.  (*Id.*).  As a result of his lateral pelvic tilt, Plaintiff is in constant pain
which prevents him from going to the medical department.  (*Id.*).  Plaintiff has days when
he is bedridden and has to elevate his leg above his heart in order to decrease the left leg
swelling.  (*Id.* at 25-26).  Plaintiff estimates that he is only able to access the medical
department 40 percent of the time due to his pain.  *Id.* at 25.

According to Plaintiff, medical officials should have policies in place allowing for
proper training and the ability to act on Plaintiff's concerns.  (*Id.* at 26-27).  Plaintiff
specifically complains about a policy or procedure in place requiring inmates to receive
their daily insulin treatment at the medical department.  (*Id.* at 27).

Dr. Kwarteng has not provided Plaintiff with any treatment for his diabetes
condition,  (*Id.* at 28).  According to Plaintiff, Dr. Kwarteng failed to implement policies
that would allow for insulin to be brought to Plaintiff or to follow up with staff as to why
Plaintiff did not get his insulin.  (*Id.*).  Plaintiff alleges that Dr. Kwarteng denied him
reasonable accommodations in the form of either having the insulin brought to him or being

provided a wheelchair or other ambulatory device to enable him to access the medical department.  (*Id.* at 28-30).

Plaintiff also holds Dr. Kwarteng responsible for adhering to a policy allowing security officials to claim Plaintiff verbally refused insulin when there is a requirement that Plaintiff instead sign a refusal of treatment form.  (*Id.*).  Plaintiff believes that Dr. Kwarteng should have sought to verify whether Plaintiff had actually refused his insulin treatment. (*Id.* at 29).  With respect to his ADA/RA claims, Plaintiff sues Dr. Kwarteng in his individual and official capacities.   (*Id.* at 30).

Plaintiff has communicated with Warden Sanchez through I-60 requests and grievances regarding his lack of access to insulin.  (*Id.* at 31).   Plaintiff has not received any responses to his formal and informal complaints.  (*Id.* at 31-33).  Plaintiff believes that Sanchez has adopted and/or implemented the verbal refusal policy or practice regarding treatment.  (*Id.* at 32).  According to Plaintiff, Sanchez also failed to: (1) properly supervise his subordinates and adopt policies requiring Plaintiff to get his daily insulin; and (2) provide Plaintiff with reasonable accommodations that would give him access to his daily insulin either though bringing him the insulin directly or allowing him to go to the medical department with the aid of ambulatory device.  (*Id.* at 33-34).  With respect to his deliberate indifference and ADA/RA claims, Plaintiff sues Sanchez in his individual and official capacities.  (*Id.* at 34).

Plaintiff never communicated with either Dr. Linthicum or TDCJ Director Lumpkin regarding his diabetes condition.  (*Id.* at 34, 36).  According to Plaintiff, however, both Dr.

Linthicum and Lumpkin failed to: (1) properly supervise their subordinates and adopt policies requiring Plaintiff to get his daily insulin by hand delivery; and (2) provide Plaintiff with reasonable accommodations that would give him access to his daily insulin either though bringing him the insulin or allowing him to access the medical department accompanied by an escort or with an ambulatory device. (*Id.* at 35-37). With respect to his deliberate indifference and ADA/RA claims, Plaintiff sues Dr. Linthicum and Lumpkin in their individual and official capacities. (*Id.* at 35, 37).

Plaintiff clarified in his *Spears* hearing testimony that he seeks monetary relief and injunctive relief in the form of obtaining reasonable accommodations to access his insulin on a daily basis. (*Id.*).

## III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal

interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

## IV.   DISCUSSION

### A.   Plaintiff's § 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates.  *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Id.* at 303-04.  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries."  *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  "Mere knowledge and acquiescence on a supervisor's part is insufficient

to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).  "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy." *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001)*).

### (1)    Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Defendants in their official capacities for monetary damages, those § 1983 claims are barred by the Eleventh Amendment.  Thus, it is

respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### (2)   Eighth Amendment - Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Id.* at 104-05.  A prison official acts with deliberate indifference if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. 825, 847 (1994).  The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference.  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).  A prison official's knowledge of substantial risk may be inferred if the risk was obvious.  *Id.*

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  In the context of medical

treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). "An inmate displaying diabetic symptoms conveys a serious medical need, and a defendant's failure to respond to that need may constitute deliberate indifference." *Oakley v. Hudson*, No. 2:13-CV-102, 2013 WL 3561173, at *6 (S.D. Tex. Jul. 11, 2013) (citing *Gobert,* 463 F.3d at 345 n. 12).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Plaintiff alleges that he is a Type 2 diabetic, that McConnell Unit medical providers prescribed him various medications taken daily to control his Type 2 diabetes, and that these medications consisted of Metformin, Glipizide, and five milligrams of insulin on a

sliding scale taken twice per day.  (D.E. 9, pp. 18-20).  Instead of complaining about his

diabetes treatment plan, however, Plaintiff claims that Defendants acted with deliberate

indifference to his serious medical needs by not allowing him proper access to his daily

insulin.  Plaintiff's allegations further reflect that:

- He is housed in closed custody which requires him to have an escort to access the diabetic clinic within the unit's medical department.

- On multiple occasions, Plaintiff cannot access his insulin treatment because escorts were not available to take him to the diabetic clinic.

- Plaintiff suffers physical disabilities in the form of a lateral pelvic tilt and resulting pain which often prevents him from going to the medical department for his daily insulin.

- Plaintiff estimates that he is able to access the medical department 40 percent of the time due to his constant pain.

- Without his insulin to control his high blood sugar, Plaintiff urinates frequently, has frequent thirst, and suffers from swelling in the lower extremities and blurred vision.

(*Id.* at 20-26).

Plaintiff asserts that Defendants have adopted and/or implemented policies or

practices making it difficult for him to access his insulin treatment on a daily basis.  (*Id.* at

26-28, 30, 32-37).  Specifically, Plaintiff cites the policy or widespread practice requiring

all inmates to physically be present at the medical department to receive their insulin

instead of having the insulin hand delivered to them.   (*Id.* at 27).   In addition, Plaintiff alleges that he is subjected to policies and/or practices in which: (1) medical staff do not follow up on instances where he misses his insulin dosage; and (2) security officials are permitted to document Plaintiff as verbally refusing insulin which is contrary to the requirement that Plaintiff sign a refusal of treatment form.  (*Id.* at 28, 30).

Plaintiff's allegations suggest that inmates like him with physical conditions impacting their movement do not have the ability to access the medical department to obtain their daily insulin treatment.  Given Plaintiff's allegation that his pain levels render him able to access his daily insulin only 40 percent of the time at the medical department, he would appear to be at risk for substantial risk of harm due to not receiving his prescribed insulin to control his high blood sugar levels.  Furthermore, according to Plaintiff, no ambulatory devices are provided which would allow him to access the medical department on the days he physically could not do so.  Plaintiff's allegations of staff shortages suggest that Plaintiff may not have a required escort on the days that he is physically able to access the medical department.

Plaintiff's allegations, accepted as true, indicate that Defendants have adopted and implemented policies impeding his ability to access his daily insulin treatment and that such actions may constitute a wanton disregard to his serious diabetic condition.  *See Cook v. Louisiana Workforce, L.L.C*, No. 16-00587, 2017 WL 4322412, at *3 (M.D. La. Sep. 28, 2017) (recognizing that, to state the existence of a constitutionally-deficient policy, an inmate must allege either that "'the [prison's] treatment system … failed to deliver

necessary and appropriate medical care' to other inmates or that the supervisor was deliberately indifferent to the fact 'that the policy would expose prisoners to substantial risk of significant unmet serious medical needs.'") (quoting *Thompkins*, 828 F.2d at 304). Further factual and legal development of this issue is necessary to determine which named defendants may be responsible for adopting and implementing the policies at issue and which named defendants are capable of providing Plaintiff his requested injunctive relief.

Accordingly, the undersigned respectfully recommends that the Court retain Plaintiff's deliberate indifference claims against Defendants in their individual and official capacities.

### B. ADA/RA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the RA, "[n]o qualified individual with a disability . . . shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher Cty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex.

Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).  The undersigned, therefore, will analyze Plaintiff's ADA/RA claims as though they were raised as a single claim.  *See Borum*, 2015 WL 327508, at *3.

To establish a valid ADA claim, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability.  *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person.  *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004).  The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry.  *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014).  "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations."  *Ball*, 792 F.3d at 596 n.9.

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

On the other hand, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'"). Thus, the ADA does not cover "the mere absence or inadequacy of medical treatment for a prisoner." *See Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018). Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376.

### (1) Individual Capacity

Plaintiff sues Defendants in their individual capacities with respect to his ADA/RA claims. A plaintiff cannot sue defendants in their individual capacities under either the

ADA or RA.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Nottingham*, 499 F. App'x at 376, n.6; *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022), *adopted* 2022 WL 2440776 (E.D. Tex. Jul 5, 2022); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021).   Accordingly, the undersigned respectfully recommends that Plaintiff's ADA/RA claims against Defendants in their individual capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### *(2) Official Capacity*

Plaintiff brings his ADA/RA claims against Defendants in their official capacities. The ADA does not "itself prohibit suits against both the State and its agencies."  *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018), *adopted* 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)).  The Fifth Circuit further has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies ( which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

Construing the pleadings liberally and accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff sufficiently states he suffers from physical impairments

that greatly limit his daily life activities and, at least for purposes of this screening, indicate he is a "qualified individual with a disability."[2]

As noted above, Plaintiff does not challenge his diabetes treatment plan as inadequate or otherwise seek additional treatment for his diabetes.  Rather, with respect to his ADA/RA claims, Plaintiff claims that Defendants discriminated against him based on his disabilities by denying him reasonable accommodations to access his prescribed daily insulin treatment in the form of either: (1) having the insulin brought to him; or (2) being provided an ambulatory device such as a wheelchair to enable him to access the medical department.

Plaintiff's allegations, accepted as true, indicate that he is unable to gain regular access to his daily insulin regimen because his physical disabilities often prevent him from accessing the diabetes clinic in the unit's medical department.  Such allegations suggest that he is being subjected to discrimination based on the denial of reasonable accommodations for his physical disabilities.  *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 726 (5th Cir. 2020) (holding that a request for a mobility device is a request for a reasonable accommodation, rather than medical treatment); *Wright v. Texas Dept. of Criminal Justice*, No. 7:13-CV-0116, 2013 WL 6578994, at *4 (N.D. Tex. Dec. 16, 2013) (finding that prisoner stated an ADA claim based on allegations that he was denied a reasonable

---

[2] "The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population." *Peña Arita v. County of Starr, Texas*, No. 7:19-cv-00288, 2020 WL 5505929, at *4 (S.D. Tex. Sep. 11, 2020) (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590-91 (5th Cir. 2016)).

accommodation for his serious mental illness by not being housed with other people or in a safe cell).

At this early stage in the proceedings, the undersigned respectfully recommends that Plaintiff's ADA/RA claims be retained against Defendants in their official capacities. Further factual and legal development of this issue is necessary to determine whether any of these defendants in their official capacities should be dismissed or whether a state agency such as the TDCJ or the University of Texas Medical Branch (UTMB) should be substituted in their place.

## V.    RECOMMENDATION

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned respectfully recommends that the Court **RETAIN**: (1) Plaintiff's Eighth Amendment deliberate indifference claims against **Dr. Lanette Linthicum, Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin** in their individual and official capacities; and (2) ADA/RA claims against **Dr. Lanette Linthicum, Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin** in their official capacities.  The undersigned will order service on Defendants by separate order.

The undersigned recommends further that: (1) Plaintiff's § 1983 claims for money damages against **Dr. Lanette Linthicum, Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; (2) Plaintiff's ADA/RA claims against **Dr. Lanette**

**Linthicum, Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin** in their individual capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

Respectfully submitted on October 14, 2022.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).